IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:07-CR-00050-KDB-CH-13

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| CHEUKMA KENYATA SANDERS, | |
| Defendant. | |

**THIS MATTER** is before the Court upon Defendant Cheukma Kenyata Sanders's Motion to Reduce Sentence Pursuant to the First Step Act of 2018. (Doc. No. 668). Sanders requests the Court reduce his sentence to time served and his supervised release term to 8 years. Having carefully reviewed the motion, the parties' briefs, and all relevant portions of the record, the Court will grant in part and deny in part Sanders's request to reduce his sentence. Exercising its discretion, the Court will reduce his sentence to 210 months and his supervised release term to 8 years under Section 404(b) of the First Step Act.

## I.  BACKGROUND

Between 2006 and 2007, Sanders participated in a drug-trafficking organization that operated and distributed crack cocaine in Iredell and Mecklenburg counties. (Doc. No. 211, ¶ 5). As part of the organization, Sanders and a co-conspirator provided crack cocaine to Elizabeth Norman. *Id.* ¶ 8. Norman also stored two assault rifles for Sanders and the co-conspirator. *Id.* ¶ 9. Sanders and 15 others were indicted and charged with conspiring to possess with intent to distribute at least 50 grams of crack cocaine and 5 kilograms of powder cocaine. (Doc. No. 78).

1

The Government filed an information under 21 U.S.C. § 851, notifying Sanders and the Court that it intended to seek an enhanced penalty based on Sanders's prior convictions for felony drug offenses. (Doc. No. 145). Sanders entered into a plea agreement with the Government, agreeing to plead guilty to the drug-trafficking conspiracy offense and stipulating that at least 1.5 but less than 4.5 kilograms of crack were reasonably foreseeable to him. (Doc. No. 164).

Prior to sentencing, the probation office submitted a presentence report. (Doc. No. 211). The probation office calculated a base offense level of 34 based on Sanders's responsibility for more than 15,000 kilograms of marijuana equivalency. *Id.* ¶ 20. Four offense levels were added because Sanders possessed a dangerous weapon and was a supervisor of Norman, resulting in an adjusted offense level of 38. *Id.* ¶ 21, 23, 25. Due to his numerous prior drug-trafficking convictions, Sanders qualified as a career offender. *Id.* ¶ 26. His adjusted offense level under the career offender guideline was a 37 and his criminal history category a VI. *Id.* However, because the adjusted offense level under the drug-trafficking guideline was higher than the career-offender guideline, the adjusted offense level under the drug-trafficking guideline controlled. *Id.* Sanders received a 3-level reduction for acceptance of responsibility. *Id.* ¶ 27. Thus, based on Sanders's total offense level of 35 and criminal history category of VI, the resulting guidelines range was 292 months to 365 months.

Because of the Government's Section 851 notice, Sanders faced a statutory mandatory-minimum term of life in prison. *Id.* ¶ 93. At the sentencing hearing, the Government partially withdrew the Section 851 notice, reducing the statutory mandatory minimum to 20 years in prison. (Doc. No. 238, at 4). The Court sentenced Sanders to 292 months in prison, the low end of the range advised by the Sentencing Guidelines, and 10 years of supervised release.

In November 2015, the Court reduced Sanders's sentence to 262 months in prison under retroactive Amendment 782 to the Sentencing Guidelines. (Doc. No. 670). This sentence was the low end of the range under the career-offender guideline (262 to 327 months), which applied once the offense level under the drug-trafficking guideline was reduced. *Id.* Sanders has a total BOP credited time of 175 months. (Doc. No. 670). He now moves this Court to reduce his sentence to time served under the First Step Act.

## II. LEGAL STANDARD

Finality is an important attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, a sentence of imprisonment is final and may not be modified once it has been imposed except in narrow circumstances. 18 U.S.C. § 3582(c). Sentence modifications under Section 3582(c) constitute narrow exceptions to the general rule of finality of sentences. Motions under Section 404 of the First Step Act seek to modify a defendant's existing sentence, and, as such, they fall under the purview of 18 U.S.C. § 3582(c).

As relevant here, the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act "reduces the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Fair Sentencing Act modified the drug quantities required to trigger mandatory minimum sentences for cocaine base (often referred to as crack cocaine) trafficking offenses; it increased the amount required to trigger the five-year mandatory minimum from 5 grams to 28 grams and increased the amount required to trigger the ten-year mandatory minimum from 50 grams to 280 grams. *See United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing Fair Sentencing

3

Act, § 2, 124 Stat. at 2372). Section 3 eliminated the five-year mandatory minimum for simple possession of crack cocaine. *Id.* (citing Fair Sentencing Act, § 3, 124 Stat. at 2372).

The relevant provisions of the First Step Act apply to "a covered offense," which means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. The First Step Act provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404, 132 Stat. at 5222. "Even if a defendant is eligible for a sentence reduction, however, the decision whether to grant a reduction is entrusted to the district court's discretion." *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020) (citing § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.")). When exercising its discretion, a district court considers the factors set forth in Section 3553(a). *See* 18 U.S.C. § 3553(a).

### III. DISCUSSION

When a defendant seeks a reduced sentence under Section 404 of the First Step Act, this Court's review proceeds in two steps. First, the Court must determine whether the defendant was sentenced for a "covered offense" as defined by the Act, and is, therefore, eligible for a sentence reduction. Here, the parties agree that Sanders is eligible for a reduction under the First Step Act. *See United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019).

Second, even if a defendant is eligible, the Court must determine whether, and to what extent, to exercise its discretion to reduce the sentence. In doing so, the Court considers the Section 3553(a) factors, including the now-applicable guidelines range and any mitigating evidence arising from the defendant's post-sentencing rehabilitation. *See United States v. Martin*, 916 F.3d 389 (4th

4

Cir. 2019). District courts are given broad discretion in deciding whether to grant a sentence reduction under Section 404 of the First Step Act. *See Jackson*, 952 F.3d at 495.

The parties spend much of their time arguing over whether the Fourth Circuit's recent decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), is retroactive. In *Norman*, the Fourth Circuit held that Section 846 offenses do not qualify as a generic conspiracy under the career offender guidelines of Section 4B1.2(b). If retroactive, this Court would be required to apply *Norman* and recalculate Sanders's guideline range without the career offender enhancement. *See United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020). Sanders argues that *Norman* is retroactive, and thus he no longer qualifies as a career offender and his now-applicable guidelines range drops from 262 to 327 months to 188 to 235 months of imprisonment.[1] The Government argues that *Norman* is not retroactive and therefore Sanders's now-applicable guidelines range remains 262 to 327 months, the same as the revised guideline calculation based on retroactive Amendment 782. The Court recognizes *Norman* and the implications it would have on Sanders's sentence if he were sentenced today, but it need not decide whether it applies retroactively.

As for the Section 3553(a) factors, Sanders asserts that even if this Court does not adopt his argument that it must correct the *Norman* error in calculating the now-applicable guidelines range, the Section 3553(a) factors independently support a time served sentence. This is for two reasons: "(1) to avoid the disparity created by the original error in applying the career-offender enhancement; and (2) to reward Sanders for his post-sentencing rehabilitation." (Doc. No. 668, at 12).

---

[1] Without Sanders's career offender status, his offense level would be a 31 and his criminal history category would be a category VI, resulting in a range of 188 to 235 months.

Sanders points to a number of cases in which district courts have granted a sentence reduction under the Section 3553(a) factors in light of the disparity created by a "career-offender error" that occurred at the original sentencing. (Doc. No. 668, at 13-14). "As these cases show," Sanders argues, "a reduced sentence of time served is necessary 'to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* at 15 (quoting 18 U.S.C. § 3553(a)(6)). Sanders contends that leaving his current sentence in place would create at least two kinds of disparity: (1) a disparity between Sanders and crack-cocaine offenders who were originally sentenced based on drug weight (rather than a "now erroneous career offender enhancement"); and (2) a disparity between Sanders and other crack-cocaine offenders who were previously sentenced as career offenders but who have received reductions under the First Step Act. *Id.*

In addition to the need to avoid unwarranted sentence disparities, Sanders argues that evidence of his post-sentencing rehabilitation warrants a reduction. Sanders received a number of disciplinary infractions while in the BOP, but argues those are outweighed by his completion of over 30 educational programs and work assignments. Sanders also contends that the COVID-19 pandemic weighs in favor of a reduction to time served. Sanders tested positive for the virus this year, and while he has since recovered, he argues "his illness is nonetheless a relevant consideration under the Section 3553(a) factors." (Doc. No. 668, at 16).

The Government, on the other hand, argues that the Section 3553(a) factors counsel against a reduction in Sanders's sentence. Sanders's history and characteristics include six drug-trafficking offenses and another felony drug offense. (Doc. No. 211, ¶¶ 34, 39-40, 43, 45). He routinely violated his probation, even after receiving suspended prison sentences. *Id.* ¶¶ 34, 39-40, 46. Between ages 18 and 33, Sanders consistently committed crimes, returning to criminal behavior

in a relatively short period after each sentence of imprisonment. *Id.* ¶¶ 31-46. Sanders ultimately accrued 19 criminal-history points, well over the 13 criminal-history points that would have placed him in the highest criminal-history category of VI. *Id.* ¶ 5; U.S.S.G. ch. 5, pt. A. The Government also argues that the need to protect the public from further offenses committed by Sanders and the need to deter him and others from similar criminal misconduct also weigh against a sentence reduction. (Doc. No. 673, at 7) (noting that Sanders "was not deterred by successive and numerous prison sentences").

The Government does not agree that a failure to reduce Sanders's sentence would result in unwarranted sentencing disparities among similarly situated defendants. It maintains that he was properly classified as a career offender at the time he was sentenced, and that his "prior offenses yielded lengthy prison sentences and are precisely the type of prior offenses that would cause one to consider him a career offender." (Doc. No. 673, at 9).

As for any post-sentencing rehabilitation, the Government asserts that such conduct does not outweigh the sentencing factors weighing against a sentence reduction. Sanders received six disciplinary citations during his time in the BOP, one as recently as 2019 for use of drugs or alcohol. Further, the Government states that "completing a few dozen educational or work programs in more than 10 years is not so exceptional that it outweighs Sanders's history of extraordinary, recidivist drug trafficking and the need to protect the public, deter Sanders and others, and to provide just punishment." (Doc. No. 673, at 9). Finally, the Government argues that the existence of COVID-19 does not weigh in favor of reducing Sanders's custodial sentence because Defendant is less vulnerable to the virus having already contracted and recovered from it. While the Government opposes a reduction in Sanders's custodial sentence, it does consent to a reduction in his supervised release term to 8 years.

The Court agrees that the balancing of the Section 3553(a) factors does not warrant a reduction, with one exception. The need to avoid unwarranted sentencing disparities among similarly situated defendants counsels in favor of a reduced sentence. There is no dispute that if Sanders were sentenced today his guideline sentencing range would be 188 to 235 months (with a statutory minimum of 120 months). Thus, the Court will exercise its discretion under Section 404 of the First Step Act and reduce Sanders's sentence to 210 months. Sanders's history and characteristics, the need to protect the public from further offenses by Sanders, and the need to deter him and others from similar criminal misconduct do not weigh in favor of a sentence below 210 months. Although Sanders would no longer be considered a career offender under *Norman*, his criminal history category would remain a category VI, the highest criminal history category available. Moreover, the Court finds that evidence of Sanders's post-sentencing rehabilitation and the presence of COVID-19 does not outweigh the Section 3553(a) factors weighing in favor of a sentence within what would be the applicable guideline range if Sanders were sentenced today. The Court will reduce Sanders's term of supervised release to 8 years.

## IV. ORDER

**IT IS THEREFORE ORDERED** that the **STAY IS LIFTED** and Sanders's Motion to Reduce Sentence Pursuant to the First Step Act of 2018, (Doc. No. 668), is **GRANTED IN PART** and **DENIED IN PART**. The Court hereby orders that Sanders's term of imprisonment and commitment to custodial authorities is reduced to an aggregate sentence of 210 months.

**IT IS FURTHER ORDERED** that Sanders, upon release from imprisonment, shall be placed on a supervised release term of 8 years on Count 1.

All other terms and conditions of Sanders's sentence remain in full force and effect.

**SO ORDERED.**

Signed: December 17, 2020

Kenneth D. Bell
United States District Judge